**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DETROIT FREE PRESS, INC.,
a Michigan corporation, and
HERALD CO., INC. d/b/a/ ANN ARBOR NEWS,
a New Jersey corporation,

       Plaintiffs,

v.

JOHN ASHCROFT,
Attorney General of the United States,
HON. MICHAEL CREPPY,
Chief Immigration Judge of the United States, and
HON. ELIZABETH HACKER,
United States Immigration Judge,

       Defendants.

_____/

U.S. District Court
Case No.

Hon. NANCY G. EDMUNDS

MAGISTRATE JUDGE CARLSON

| | |
|---|---|
| Herschel P. Fink | Jonathan D. Rowe |
| Brian D. Wassom | Soble & Rowe LLP |
| Honigman Miller Schwartz and Cohn LLP | Attorneys for Plaintiff Herald Co., Inc. |
| Attorneys for Plaintiff Detroit Free Press | d/b/a/ Ann Arbor News |
| 2290 First National Building | 221 N. Main St. #200 |
| Detroit, MI 48226 | Ann Arbor, MI 48104 |
| (313) 465-7400 | (734) 662-9252 |

_____/

**COMPLAINT FOR ACCESS**
**TO IMMIGRATION COURT PROCEEDINGS**

Now come the Detroit Free Press, Inc. ("Free Press"), by its counsel Honigman Miller

Schwartz and Cohn LLP, and Herald Company, Inc. d/b/a Ann Arbor News ("Ann Arbor

News"), by its counsel Soble & Rowe LLP, seeking enforcement of its First Amendment right of

access to the closed proceedings against Rabih Haddad in the United States Immigration Court in

Detroit, Michigan.  For their complaint, Plaintiffs state the following:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Free Press is a Michigan corporation which publishes the Detroit Free Press, the largest general circulation newspaper in Michigan. Herald Company, Inc., d/b/a Ann Arbor News, is a New Jersey corporation engaged in the business of distributing a daily newspaper in southeastern Michigan, with offices at 340 East Huron Street, Ann Arbor, Michigan 48104. Plaintiffs have extensively reported on, and will continue to report on, matters related to the treatment of ethnic Arabs in the United States by government officials, both nationally and locally, in the wake of the September 11th terrorist attacks.

2.      Defendant Ashcroft is the Attorney General of the United States. Defendant Creppy is the Chief Immigration Judge of the United States. Defendant Hacker is a United States Immigration Judge based in Detroit, Michigan. Defendants Ashcroft, Creppy, and Hacker are agents of the United States Government.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1361, and/or 5 U.S.C. § 701 *et seq.*

4.      Venue is appropriate in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, both because Defendant Hacker, upon information and belief, resides and conducts official business within this district, and because a substantial part of the events or omissions giving rise to this claim occurred within this district.

## COMMON ALLEGATIONS

5.      On September 21, 2001, Defendant Creppy issued a memorandum to all United States Immigration Judges and Court Administrators (the "Creppy Memo," attached as Exhibit A). The Creppy Memo, which purports to be implementing the directive of Defendant Ashcroft, outlines "additional security measures" to be immediately applied in certain cases designated by

2

Defendant Ashcroft. *Id.* "Those procedures require [immigration judges] to hold the hearings individually, to close the hearing to the public, and to avoid discussing the case or otherwise disclos[e] any information about the case to anyone outside the Immigration Court." *Id.* The Creppy Memo specifically instructs that "[t]he courtroom must be closed for these cases – no visitors, no family, and no press." *Id.*

6.      Rabih Haddad ("Haddad") is a native of Lebanon and a resident of Ann Arbor, Michigan. Haddad, considered by some to be a leader in the southeastern Michigan Muslim community, is a co-founder and trustee of Global Relief Foundation ("GRF") of Bridgeview, Illinois.

7.      On December 14, 2001, federal agents raided the offices of GRF and froze its assets, on the suspicion that GRF was linked with terrorism. On the same day, INS agents also arrested Haddad, ostensibly due to a visa violation. Haddad entered the United States in 1998 on a tourist visa that has allegedly expired. Haddad has applied for permanent residency under the LIFE Act of 2000. Exhibit B (December 18, 2001 news articles).

8.      Since his arrest, Haddad has been detained in an undisclosed facility, presumably a Monroe County jail.

9.      On December 19, 2001, Haddad's detention was ordered continued at a closed hearing presided over by Defendant Hacker. Outside the courthouse, over 100 demonstrators protested what they saw as an example of discriminatory treatment towards persons of Arab descent. Several persons, including a Free Press reporter and an Ann Arbor News reporter, sought access to the hearing and were turned away. Exhibit C (December 19, 2001 news article); Exhibit D (Aff. of Narij Warikoo).

3

10.     On January 2, 2002, Defendant Hacker again ordered Haddad's detention continued in another closed hearing. Over 250 demonstrators gathered near the courthouse to protest Haddad's detention. Again, several persons sought access to the hearing and were turned away, including a Free Press reporter and an Ann Arbor News reporter. Exhibit D; Exhibit E (January 2, 2002 news article).

11.     On January 10, 2002, a third closed hearing was held. At that hearing, Defendant Hacker explicitly acknowledged that the reason for the closure of the proceedings to the public and to the media was that Haddad's case had been designated by Defendant Ashcroft as one to which the secrecy procedures described in the Creppy Memo would apply. No particularized findings were made by Defendant Hacker as to why closure was essential in this case. Exhibit F (Affidavit of Ashraf Nubani, Esq.).

12.     There are additional proceedings scheduled in the Haddad matter, including a hearing on February 19, 2002.

13.     The public and press have a Constitutional right of access to judicial and quasi-judicial governmental proceedings and records relating to them, and such proceedings and records are presumptively open. The presumption of access may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. Any such interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

14.     The right of the public and press to open access to Haddad's proceedings is also protected by statute and INS regulations.

4

15.     The need for openness is all the more vital in this case, which is of great public interest and importance, involving as it does innuendo of terrorist connections and the federal government's treatment of Arabs in America in the aftermath of September 11th.  Secrecy in cases such as these feeds public suspicions and undermines confidence in the integrity of our governing agencies.  These concerns are particularly acute in this case, given Haddad's apparent popularity in the community, and metropolitan Detroit's well-known status as home to the largest Arab-American population in the United States.  As the Supreme Court has often noted, the Constitution's Bill of Rights and the wisdom of history instruct that only the uncensored flow of information will allow our free society to remain viable.  This Court should heed these warnings, now more than ever.

## COUNT I – DECLARATORY JUDGMENT

16.     Plaintiffs reallege and incorporate herein the allegations of each preceding paragraph.

17.     The procedures described in the Creppy Memo were implemented at the direction of Defendants Ashcroft and Creppy.

18.     Pursuant to the Creppy Memo, immigration judges and court administrators are required to close to the public and press any proceedings designated for closure by Defendants Ashcroft and/or Creppy.  Such closures are enforced without any case-specific, articulated findings particular enough that a reviewing court can determine whether the closure order was properly entered, and without any finding: (1) of an overriding interest that would be implicated by open proceedings; (2) that closure is essential to preserve higher values; or (3) that the closure is narrowly tailored to serve that interest.  Further, such closures are also entered without any

finding that they are necessary "for the purpose of protecting witnesses, parties, or the public interest," as required by INS regulations.

19.     Therefore, by issuing and enforcing the Creppy Memo, Defendants Ashcroft and Creppy have violated the rights of the public and press guaranteed by the United States Constitution and federal statutory and regulatory law.

WHEREFORE, Plaintiffs request that they be granted the following relief:

A. A declaratory judgment that the Creppy Memo and the procedures it implements, facially and as applied, are in violation of the rights of the public and press guaranteed by the United States Constitution and federal statutory and regulatory law;

B. An award of Plaintiffs' costs and attorneys' fees related to this action;

C. Any further relief that the Court deems just.

## COUNT II – PRELIMINARY AND PERMANENT INJUNCTION

20.     Plaintiffs reallege and incorporate herein the allegations of each preceding paragraph.

21.     Continued closure of the Haddad proceedings, and refusal to produce transcripts and records related to the case, has caused and will continue to cause irreparable harm to Plaintiffs. Closed proceedings impair Plaintiffs' ability to gather and report news and otherwise exercise its constitutional right of access to judicial and quasi-judicial governmental proceedings. Further, in the context of newsgathering and reporting, delayed access to information is equivalent to no access at all.

22.     The rights that Plaintiffs seek to exercise are fundamental to the operation of our free society and democratic form of government. No justification for closing the Haddad

6

proceedings has been offered by Defendants or any other governmental agent.  Therefore, the balance of interests strongly favors opening the Haddad proceedings to the public.

WHEREFORE, Plaintiffs request that they be granted the following relief:

A.  A preliminary injunction requiring Defendants to permit Plaintiffs access to all future proceedings related to Haddad, and to produce to Plaintiffs forthwith transcripts of all related proceedings already held, and copies of all documents related to the case;

B.  A permanent injunction to the same effect;

C.  An award of Plaintiffs' costs and attorneys' fees related to this action;

D.  Any further relief that the Court deems just.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: _____
Herschel P. Fink
Brian D. Wassom
Attorneys for Plaintiff Detroit Free Press
2290 First National Building
Detroit, Michigan  48226
(313) 465-7400

SOBLE & ROWE LLP

By: _____
Jonathan D. Rowe
Attorneys for Plaintiff Herald Co., Inc.
d/b/a/ Ann Arbor News
221 N. Main St. #200
Ann Arbor, MI 48104
(734) 662-9252

DATED: January 29, 2002                                                      DET_C\468217.1

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED